■ MIGUEL REYES, Appellant, v HARDING STEEL, INC., et al., Respondents, et al., Defendant. HARDING STEEL, INC., Third-Party Plaintiff-Appellant, v LEWISTOWN MANUFACTURING, INC., Third-Party Defendant-Respondent. (And a Fourth-Party Action.) [856 NYS2d 562]—

Order, Supreme Court, Bronx County (Betty Owen Stinson, J.), entered February 27, 2007, which granted the motions of third-party defendant Lewistown Manufacturing, Inc. and defendants Nate Nate Metal Craft, Barzel Iron Works, Inc., and Metal Craft by N. Barsily, Inc. (collectively, Metal Craft) for summary judgment dismissing the complaints and all cross claims against them, and granted defendant Harding Steel, Inc.'s motion for summary judgment dismissing the complaint as against it and on its third-party claims against Lewistown and its cross claims against Metal Craft to the extent of dismissing the complaint as against it, unanimously modified, on the law, to reinstate the complaint as against Harding and Metal Craft and to reinstate Harding's cross claims against Metal Craft for common-law indemnification, and otherwise affirmed, without costs.

Plaintiff commenced this products liability action to recover damages for injuries he sustained when a parking lift collapsed because of the alleged failure of the telescopic lift rods. Plaintiff's testimony that, after the accident, the rear lift rods were broken at the threads and "opened up like a flower" was sufficient to raise an inference that the rods did not perform as intended and were the cause of the lift's collapse (see Speller v Sears, Roebuck & Co., 100 NY2d 38, 41 [2003]). Further evidence that the lift rods were defective was provided by the president of fourth-party defendant MD Parking Machine Specialists, an installer of parking lift machines, who inspected the rods shortly after the accident and opined, in a letter to Harding that was admissible as a business record (see Petrocelli v Tishman Constr. Co., 19 AD3d 145, 146 [2005]), that the rods

could not support the weight of the lift because their threading was cut too deep.

Defendants' theory that the lift collapsed because plaintiff was adjusting it improperly is unsupported by any evidence (*see Novak v Corco Chem. Corp.*, 194 AD2d 652, 653 [1993]). Lewistown's general manager testified that applying force as plaintiff was doing at the time of the accident would *not* cause the parking lift to collapse. While he also testified that the lift could collapse if a load of more than 50,000 pounds caused the teeth in the locking mechanism to become separated from the rest of the assembly, there is no evidence in the record that the teeth became separated.

Harding may be held liable for the allegedly defective rods as a retailer or distributor thereof (*Sukljian v Ross & Son Co.*, 69 NY2d 89, 95 [1986]). Moreover, as it expressly warranted the parking lift and its replacement and component parts, and its chairman and CEO testified that the warranty was in effect for the subject lift, Harding may be held liable for breach of warranty.

An issue of fact as to Metal Craft's liability was raised by the post-accident statements of the aforementioned individuals, albeit hearsay, that Metal Craft manufactured the allegedly defective rods, in conjunction with the testimony of Harding's chairman and CEO that Harding paid Metal Craft to manufacture the rods (*see Guzman v L.M.P. Realty Corp.*, 262 AD2d 99, 100 [1999]). Harding therefore may pursue its cross claims against Metal Craft for common-law indemnification (*see generally McDermott v City of New York*, 50 NY2d 211, 216-217 [1980]).

The third-party complaint against Lewistown was correctly dismissed because the evidence establishes that, after the parking lift left Lewistown's control and before the accident, lift rods that Lewistown fabricated were replaced by the allegedly defective rods, which it did not fabricate (*see Robinson v Reed-Prentice Div. of Package Mach. Co.*, 49 NY2d 471, 475 [1980]). Concur—Lippman, P.J., Tom, Williams and Acosta, JJ.